UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JANI B. S.[1], | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-03059-DLP-TWP |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Defendant. | ) | |

### Order

Plaintiff Jani B. S. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 423(d). For the reasons set forth below, the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings.

### I.   Procedural History

On May 30, 2017, Jani filed an application for Title XVI SSI. (Dkt. 16-2 at 52, R. 51). Jani's application alleged disability resulting from autism, anxiety, depression, interstitial cystitis, and polycystic ovary syndrome. (Dkt. 16-6 at 6, R. 237). The Social Security Administration ("SSA") denied Jani's claim initially on

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

October 11, 2017, (Dkt. 16-3 at 14, R. 106), and on reconsideration on December 15,
2017. (Id. at 29, R. 121). On February 11, 2018, Jani filed a written request for a
hearing, which was granted. (Dkt. 16-4 at 13, R. 133). On November 22, 2019,
Administrative Law Judge ("ALJ") Jan Leventer conducted a hearing, where Jani
and her counsel appeared in person and vocational expert, Harry Cynowa, appeared
telephonically. (Dkt. 16-2 at 69, R. 68). On January 15, 2020, ALJ Leventer issued an
unfavorable decision finding that Jani was not disabled. (Dkt. 16-2 at 52-60, R. 51-
59). Jani appealed the ALJ's decision and, on September 20, 2020, the Appeals
Council denied Jani's request for review, making the ALJ's decision final. (Dkt. 16-2
at 3-5, R. 2-4). Jani now seeks judicial review of the ALJ's decision denying benefits.
*See* 42 U.S.C. § 1383(c)(3).

## II.   STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the
Social Security Act. To prove disability, a claimant must show she is unable to
"engage in any substantial gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not less than twelve
months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments
must be of such severity that she is not able to perform the work she previously
engaged in and, based on her age, education, and work experience, she cannot engage
in any other kind of substantial gainful work that exists in significant numbers in the
national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has implemented these

2

statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a). The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 416.920. (A negative answer at any point, other than step three and five, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine

whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Jani is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III.   BACKGROUND

#### A. Factual Background

Jani was twenty-six years old on the date her application was filed. (Dkt. 16-6 at 2, R. 233). She has a high school education. (Dkt. 16-2 at 58, R. 57). She has no past relevant work history. (Id.).

#### B. ALJ Decision

In determining whether Jani qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Jani was not disabled. (Dkt. 16-2 at 52-60, R. 51-59). At Step One, the ALJ found that Jani had not engaged in substantial gainful activity since her application date of May 30, 2017. (Id. at 54, R. 53).

At Step Two, the ALJ found that Jani has severe impairments of interstitial cystitis, kidney stones, endometriosis, gastroesophageal reflux disorder, lower extremity paresthesias, hypertension, autism spectrum disorder, anxiety with panic attacks, and binge eating disorder. (Dkt. 16-2 at 54, R. 53).

At Step Three, the ALJ found that Jani's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 416.920(d), 416.925, and 416.926, considering Listings 11.14, 12.06, 12.10, and 12.13. (Dkt. 16-2 at 54-56, R. 53-55). As to the "paragraph B" criteria, the ALJ concluded that Jani had moderate limitations in all four categories: understanding, remembering or applying information; interacting with others; adapting or managing oneself and concentrating, persisting, or maintaining pace. (Id.).

After Step Three but before Step Four, the ALJ found that Jani had the residual functional capacity ("RFC") to perform "light work," as defined in 20 C.F.R. § 416.967(b), with the following limitations: occasionally climb ramps and stairs; never crawl or climb ladders, ropes, or scaffolds; avoid all exposure to unprotected heights and moving mechanical parts; occasionally operate a motor vehicle; limited to simple, routine tasks not at a production rate pace and simple work-related decisions; and occasionally interact with general public. (Dkt. 16-2 at 56, R. 55).

At Step Four, the ALJ concluded that Jani has no past relevant work. (Dkt. 16-2 at 58, R. 57). The ALJ then concluded that, considering Jani's age, education, work experience, and residual functional capacity, that Jani could perform jobs that exist in significant numbers in the national economy, such as hand packager, small products assembler, and visual inspector checker. (Id. at 58-59, R. 57-58). The ALJ thus concluded that Jani was not disabled. (Id. at 59-60, R. 58-59).

## IV.   ANALYSIS

The Plaintiff challenges the ALJ's decision on several grounds. First, the Plaintiff argues that the ALJ erred when considering the "paragraph B" criteria by only considering a limited view of Jani's activities of daily living, failing to consider the entirety of her behavioral therapist's medical opinion, and omitting all consideration of her therapist's records and opinions. (Dkt. 21 at 13 at 24; Dkt. 23 at 1-16). Second, the Plaintiff contends that the ALJ did not properly consider Social Security Ruling 15-1p when evaluating whether Jani's impairments met or equaled any of the Listings or conducting the RFC analysis. (Id.). Third, Jani maintains that

the ALJ failed to provide sufficient support for finding the medical opinion of her behavioral therapist to be unpersuasive and explain why she did not consider the medical opinion of her therapist. (Id.). Fourth, Jani argues that the ALJ conducted a faulty 16-3p analysis of her subjective symptoms. (Id.).

## A. "Paragraph B" Analysis

The ALJ concluded that the severity of Jani's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of [L]istings 12.06, 12.10, and 12.13." (Dkt. 16-2 at 55, R. 54). In making that conclusion, the ALJ considered whether the "paragraph B" criteria were satisfied. (Id.). Jani argues that the ALJ relied on a limited and skewed version of her activities of daily living when evaluating her limitations in the four "paragraph B" areas. (Dkt. 21 at 17-23)[2].

To determine whether a mental impairment meets or equals listing level severity at Step Three of the sequential analysis, a claimant must prove she meets the severity criteria of either paragraph B or C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. To satisfy the paragraph B criteria, a plaintiff must demonstrate an "[e]xtreme limitation of one, or marked limitation of two" of four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. *Id.* To evaluate these four areas, ALJs will investigate how an impairment interferes with a claimant's ability to function independently, appropriately, effectively, and on

---

[2] The paginated numbers provided at the bottom of Plaintiff's Opening Brief do not correspond with the paginated numbers of the brief on the Docket. The Undersigned has chosen to cite to the paginated numbers from the Docket.

a sustained basis, as well as the quality and level of overall functional performance, any episodic limitations, the amount of supervision or assistance required, and the settings in which a claimant is able to function. 20 C.F.R. § 404. 1520a(c)(2). Plaintiff bears the burden of proving that her "impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2005); see also 20 C.F.R. § 404.1525(d). "To support reversal, 'a claimant is required to identify the medical evidence showing that he or she would have satisfied the Step 3 criteria if the ALJ had considered the relevant issues.'" *Esther V. v. Saul*, No. 19-CV-8093, 2021 WL 1121123, at *5 (N.D. Ill. Mar. 24, 2021) (citing *Heuschmidt v. Colvin*, 2015 WL 7710368, at *3 (N.D. Ill. Nov. 30, 2015)).

The ALJ explained her findings regarding the "paragraph B" areas as follows:

In understanding, remembering, or applying information, the claimant has a moderate limitation. The claimant reported she is able to prepare food, visit with a friend, help to care for her pets, do laundry, vacuum the floor, handle a savings account, use a checkbook, and play videogames. (Claimant Testimony, Ex. 6E).

In interacting with others, the claimant has a moderate limitation. The claimant reported she is able to visit with her friend (Claimant Testimony, Ex. 6E).

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant reported she is able to prepare food, visit with her friend, help care for her pets, do laundry, vacuum the floor, handle a savings account, use a checkbook, and play videogames. (Claimant Testimony, Ex. 6E).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant reported she is able to prepare food, visit with her friend, help care for her pets, do laundry, vacuum the floor, handle a savings account, use a checkbook, and play videogames. (Claimant Testimony, Ex. 6E).

9

(Dkt. 16-2 at 55, R. 54).

From this explanation, the only reason the ALJ found to support assigning moderate limitations to each of the four "paragraph B" areas came from Plaintiff's activities of daily living endorsed at the hearing and in her function report. The Court notes, however, that the ALJ's decision is read as a whole and that the ALJ's RFC discussion may be considered in conjunction with the Step Three discussion. *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015).

Plaintiff argues that the ALJ placed too much emphasis on Jani's activities of daily living without considering their context, and failed to explain how these cited activities translate into her ratings under the "paragraph B" criteria. First, the Court acknowledges that the ALJ simply listed the same activities of daily living for three of the four areas, regardless of the functional area in question. Second, the ALJ's presentation of the Plaintiff's claimed activities of daily living is limited and, at times, skewed, often leaving out the Plaintiff's qualifications. On her November 30, 2017 function report, Plaintiff listed her activities as follows: Plaintiff's mother helps her care for her ferrets, which her therapist encouraged her to interact with since it helps her mental health symptoms; she often forgets to brush her teeth unless she sets an alarm, but oftentimes sleeps through the alarm; she must set alarms to remind herself to take medications and then write a note to herself so that she does not accidentally take the medication; she can make packaged foods and sandwiches, but her mom cooks for her when she is in too much pain; when her pain levels are very high, she will sometimes forget to eat; she will do laundry sporadically or

vacuum every few weeks, but her parents assist with laundry; she goes out of the house alone, but only on particularly good pain days; her pain often wakes up her up multiple times in the middle of the night; she rarely drives for long distances in case her pain levels spike; she shops for pet supplies, clothes, and household items by computer; her father helps her pay any bills that she does have; and she talks with friends online instead of in person since she does not drive due to her pain and fatigue levels. (Dkt. 16-6 at 37-42, R. 268-273). Additionally, Plaintiff noted that she needs instructions repeated to her multiple times; she does not handle stress well because she breaks down and cries daily, along with having panic attacks; she does not handle changes in routine well due to her anxiety; and in the few times she has left her house on her own, she has gotten scared and had to talk herself down from having a panic attack. (Dkt. 16-6 at 42-43, R. 273-74). Finally, Plaintiff included this narrative at the end of the function report:

> Memory, completing tasks, concentration, understanding/following instructions are all things affected by my autism, depression, ADD, and anxiety disorder. Also, since being on pain meds and Lupron, it is more difficult to focus and remember things. My usual pain level is at a 6 on good days, but bad days are common. I conserve pain meds and only take them when the pain is completely intolerable and when it's too terrible to get to sleep. I've been getting kidney stones since I was twelve, and the stones have completely redefined my pain scale. What was once a 9 is now a 5, but that doesn't make it any less painful or horrible to live with. I have had three surgeries over the last year, and November of last year was the first time I was ever put under general anesthesia. I was in so much pain from various illnesses that I thought it would be fine if I simply didn't wake up. Now, I at least have answers, but the pain is still there.

(Dkt. 16-6 at 44, R. 275).

At the disability hearing in November 2019, the Plaintiff noted that she shuts down when she gets overwhelmed. (Dkt. 16-2 at 78, R. 77). She also stated that her anxiety is triggered by crowded places, loud noises, and being touched, and that her anxiety makes it difficult for her to leave the house. (Dkt. 16-2 at 86-87, R. 85-86). Plaintiff testified that her social worker, Ms. Julie Krasnow, would assist her in getting acclimated to environments that make her anxious, such going to the bank or grocery store or other places outside of the home. (Dkt. 16-2 at 81, R. 80). Since Plaintiff had not left her house much in the years preceding the hearing, Jani testified that Ms. Krasnow would come to Plaintiff's home and assist her with things around the house. (Id.). When questioned about whether there was anything else the Plaintiff would like to tell the ALJ about her disability from work, Plaintiff eventually stated: "my mental health, and my physical health problems are very closely linked. The worse my pain is, the more likely I am to go into sensory overload and shut down, and when I shut down, I often can't speak, or communicate with people really at all; I go non-verbal. And, I think, that's like one of my main obstacles is that I shut down when I have too much sensory input, and that includes pain." (Dkt. 16-2 at 82-83, R. 81-82). On a bad day, Plaintiff testified that she stays in bed and does not eat, sleep, or shower, and that these bad days occur two or three times per week. (Dkt. 16-2 at 84-85, R. 83-84). On good days, she is able to make food, go to therapy, and pick up a prescription at the nearby pharmacy. (Id.). As part of her Asperger's syndrome, she has sensory issues and auditory processing issues, which often result in her squinting at someone trying to speak to her because she needs to

12

concentrate in order to process what that person is saying. (Id. at 85, R. 84). Plaintiff also noted again that all of her conditions, physical and mental, interact with and feed off of each other. (Id. at 84-86, R. 83-85). She interacts with her friends online for the most part, and sees one friend in person every few months. (Id. at 86-87, R. 85-86). She has panic attacks a few times per week, and has the most severe panic attacks once per month. (Id. at 88, R. 87).

Jani's social worker, Ms. Krasnow, compiled quarterly reports regarding Jani's progress. On December 27, 2018, Ms. Krasnow filled out a Functional Behavior Assessment. (Dkt. 16-8 at 118-122, R. 729-733). Ms. Krasnow noted that Jani suffers immensely from her medical conditions and continues to be in pain on a daily basis, and that as a result of her diagnoses, it is difficult for Jani to function as an independent adult, hold down a job, and access the community on a regular basis. (Id. at 120, R. 731). Ms. Krasnow further stated that Jani's mental disorders have a great impact on her behavior as they interfere with her executive functions, which include poor planning, difficulty switching focus, difficulty staying on task, time management, organization, and remembering details. (Id.). Ms. Krasnow indicated that "Jani's behavior is a function of how she is feeling physically. Jani is more likely to engage in her target behaviors when she is ill or in pain. She is also more likely to engage in these behaviors when she is feeling overwhelmed or stressed." (Id. at 121, R. 732). For the quarterly report ending February 2019, Plaintiff reported an increase in stress related to recovering from the family holidays, pain, computer failure, and her ferret's poor health. (Dkt. 16-8 at 116, R. 727). During that quarter, Jani had not

been getting out as much in the community, had been driving less, and had been
spending less time with her friend. (Id.). For each of the three months in that quarter,
Jani reported having four meltdowns per months, with meltdowns involving crying,
rocking, hyperventilating, starching herself, an inability to speak, and shrieking. (Id.
at 115-116, R. 726-27). Finally, Plaintiff points out that the SSA employee who took
Plaintiff's benefit application over the phone on June 2, 2017, M. Bryja, specifically
noted that Jani "seemed to have a lot of trouble remembering and some trouble
understanding the questions and the process." (Dkt. 16-6 at 73, R. 234).

Little to none of this information was included or referenced in the ALJ's
opinion. Moreover, as Plaintiff points out, the ALJ cites to a limited view of Plaintiff's
activities, but never explains how those activities support a finding of moderate
limitations in the four functional areas or indicate that Plaintiff is exaggerating her
symptoms. *Sam K. v. Saul*, 391 F. Supp. 3d 874, 881 (N.D. Ill. 2019) (ALJ erred by
listing activities of daily living but failing to explain how those activities were
inconsistent with Plaintiff's claimed symptoms). Additionally, despite multiple
mentions from Plaintiff, it does not appear the ALJ considered how Plaintiff's pain
and fatigue combined with her mental impairments interfered with her daily
activities. *Clark v. Saul*, 421 F. Supp. 3d 628, 633 (N.D. Ind. 2019) (ALJ erred when
not considering how fatigue affected daily activities, especially where claimant had
more flexibility to complete activities as compared with full-time work). Similarly,
ALJs must take into consideration that, when performing activities of daily living,
Plaintiff can obtain as much help from others as needed, work at her own pace

14

depending on symptoms, and take as many breaks between activities for as long as needed, and that employers generally do not permit such flexibility. *RuthAnn G. v. Saul*, No. 2:20-cv-252, 2021 WL 2349671, at *9 (N.D. Ind. June 9, 2021) (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

Despite the ALJ's failure to consider the above-referenced information in the "paragraph B" section, when reading the ALJ's decision as a whole, the Court finds that the ALJ considered the relevant medical and non-medical evidence in other sections of the opinion. Although the ALJ considered a limited version of the Plaintiff's activities of daily living in the "paragraph B" section, the ALJ also weighed this evidence alongside the relevant record evidence when determining Jani's degree of limitation in each "paragraph B" area. For example, the ALJ considered Plaintiff's report to her doctor in March 2019 that medication and therapy were helping her mental health symptoms; and her report in July 2019 that her mental health symptoms were stable, she had fewer mood swings and panic attacks, and she was able to get outside more. (Dkt. 16-2 at 57, R. 56). The ALJ noted that Jani presented to her consultative psychological evaluation with intact memory and normal thought content/process. (Id.). The ALJ also weighed the medical opinion of Jani's social worker, Ms. Krasnow, along with the opinions of the state agency psychological consultants, and discounted both due to Jani's reports of improving symptoms and her normal mental status during examinations. (Id. at 58, R. 57). "While there may be other evidence that could support/disprove any of the ALJ's conclusions in h[er] Paragraph B analysis, this is a question of weighing the evidence." *Esther V. v. Saul*,

No. 19-CV-8093, 2021 WL 1121123, at *7 (N.D. Ill. Mar. 24, 2021). The ALJ engaged with both sides of the record here, and her analysis and explanation when read as a whole is sufficient to justify her conclusion regarding the "paragraph B" limitations.

### B. Social Security Ruling 15-1p

Next, Jani argues that the ALJ erred by providing little to no analysis as to how her interstitial cystitis interacted with her mental disorders, which resulted in an insufficient consideration of whether her impairments met or medically equaled any listing and how the interplay of her medical conditions would impact the RFC analysis. (Dkt. 21 at 13-23). Additionally, Plaintiff maintains that Social Security Ruling 15-1p outlines how ALJs should evaluate cases involving interstitial cystitis, and that the ALJ failed to meet those requirements. (Id.).

SSR 15-1p states that interstitial cystitis ("IC") is a complex genitourinary disorder involving recurring pain or discomfort in the bladder and pelvic region. 2015 WL 1292257, *2. IC may co-occur with fibromyalgia, chronic fatigue syndrome, irritable bowel syndrome, inflammatory bowel disease, vulvodynia, chronic headaches, Sjögren's syndrome, endometriosis, or systemic lupus erythematosus. *Id*. Treatments for IC are mostly directed at symptom control. . . . but [t]reatment is not effective for everyone because response varies among patients.[3] *Id*. at *3. IC

---

[3] "Like fibromyalgia, interstitial cystitis is a chronic pain disorder, one that seems to have a similar difficulty in diagnosis and treatment. *See* Mayo Clinic website, http://www.mayoclinic.org/diseases-conditions/interstitial-cystitis/home/ovc-20251830 ('Interstitial cystitis most often affects women and can have a long-lasting impact on quality of life. Although there's no cure, medications and other therapies may offer relief. [ ] Frequent urination and pain may interfere with social activities, work and other activities of daily life.'); Harvard Health Publications, 'Diagnosing and treating interstitial cystitis,' http://www.health.harvard.edu/diseases-and-conditions/diagnosing-and-treating-interstitial-cystitis ('There's no cure for IC, but many treatments offer some relief, either singly or in combination. Figuring out what works can be hit-or-miss; there's no way to predict who will respond best to which

symptoms may vary in incidence, duration, and severity from person to person, and

even in the same person. For example, a woman's symptoms may worsen around the

time of menstruation. *Id.* at *4. Symptoms of IC include, but are not limited to:

1. *Pain.* People who have IC report chronic bladder and pelvic pain, pressure, and discomfort. This pain may range from mild discomfort to extreme distress. The intensity of the pain may increase as the bladder fills and decrease as it empties. In addition to bladder and pelvic pain, people with IC may experience vaginal, testicular, penile, low back, or thigh pain.

2. *Urinary urgency and frequency.* People who have IC may report an urgent need to urinate (urgency) or a frequent need to urinate (frequency), or both. Some people with severe cases of IC may need to void as often as 60 times per day, including nighttime urinary frequency (nocturia) with associated sleep disruption.[16]

3. *Other symptoms.* In addition to chronic pain and urinary urgency or frequency or both, the person may report additional IC symptoms, such as:

   - Suprapubic tenderness on physical examination;
   - Sexual dysfunction (including dyspareunia);
   - Sleep dysfunction; and
   - Chronic fatigue or tiredness.

*Id.* at *4.

"People who have IC may report ongoing mental conditions directly associated

with their IC. For example, a person may report having anxiety or depression

associated with IC symptoms of chronic bladder and pelvic pain, and urinary

urgency, frequency, or both. When these mental conditions are documented by mental

status examination(s) or psychological testing, they may constitute medical signs or

(in the case of psychological testing) laboratory findings that help establish a

---

treatment. Fortunately, increasing awareness and greater understanding of this complex disorder are helping to speed diagnosis and encourage research.') (August 2011)." *Merriman v. Berryhill*, No. 16 CV 50073, 2017 WL 2345551, at *1 (N.D. Ill. May 30, 2017).

[medically determinable impairment] of IC." *Id.* at *5. The process for evaluating a claimant's statements regarding symptoms and functional limitations associated with IC is similar to the two step-process used for evaluation of symptoms generally. *Compare* SSR 15-1p, 2015 WL 1292257 *with* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). "In assessing RFC related to a [medically determinable impairment] of IC, we must consider all of the person's impairment-related symptoms in deciding how such symptoms may affect functional capacity. For example, many people with IC have chronic pelvic pain, which can affect the ability to focus and sustain attention on the task at hand. Nocturia may disrupt sleeping patterns and lead to drowsiness and lack of mental clarity during the day. Urinary frequency can necessitate trips to the bathroom as often as every 10 to 15 minutes, day and night. Consequently, some individuals with IC essentially may confine themselves to their homes." *Id.* at *8.

Plaintiff contends that the ALJ never mentions Social Security Ruling 15-1p, but more importantly that it does not appear the ALJ complied with the directive contained in that SSR to consider the combination of Plaintiff's impairments when conducting the Listing and RFC analyses. (Dkt. 21 at 14-23). As noted previously, Jani endorsed having chronic pelvic and urinary pain, not alleviated by position changes; difficulty sleeping; chronic fatigue; and difficulty concentrating and sustaining attention, among other symptoms. Plaintiff maintains that the ALJ failed to adequately consider the combined impact of these symptoms, in violation of SSR 15-1p. (Id.).

Several cases across the country have concluded that an ALJ's failure to discuss SSR 15-1p (or its almost identical predecessor SSR 02-2p), along with a failure to adequately analyze the full scope of a claimant's interstitial cystitis, its interplay with other impairments, and any limitations imposed by those impairments, constitutes reversible error. *See Chavis v. Astrue, 2012 WL 2711271, at *23* (S.D. Ohio July 9, 2012) (finding that the ALJ's decision does not demonstrate that he followed SSR 02–2p because he failed to examine the intensity, persistence and limiting effects of claimant's IC and the decision is void of any discussion of the limitations imposed by claimant's impairment), *adopted by* 2012 WL 5306130 (S.D. Ohio Oct. 26, 2012); *Powell v. Comm'r of Soc. Sec.*, No. 2:12-CV-12955, 2013 WL 3762954, at *11 (E.D. Mich. July 17, 2013) (same); *Janine H. v. Kijakazi*, No. 2:21-CV-00183-LRS, 2022 WL 1086616, at *5 (E.D. Wash. Apr. 11, 2022) (ALJ's failure to discuss IC at Step Three, in addition to over-emphasis on limited view of activities of daily living, required remand); *Schneider v. Colvin*, No. 8:16-CV-338-T-30TBM, 2017 WL 345877, at *6-7 (M.D. Fla. Jan. 5, 2017), report and recommendation adopted sub nom. *Schneider v. Comm'r of Soc. Sec.*, No. 8:16-CV-338-T-30TBM, 2017 WL 320948 (M.D. Fla. Jan. 23, 2017) (ALJ's failure to consider combined effect of claimant's impairments and symptoms, in violation of SSR 02-2p, was error); *Burns v. Berryhill*, No. 1:18-CV-01015-CBK, 2018 WL 4938585, at *5 (D.S.D. Oct. 11, 2018) (ALJ erred by failing to comply with SSR 15-1p's directive to consider combination of claimant's impairments at Step Three and in RFC analysis); *Denslow v. Comm'r of Soc. Sec.*

19

*Admin.*, No. CV-19-01718-PHX-MTM, 2020 WL 1083788, at \*4 (D. Ariz. Mar. 6, 2020) (same).

The Court has already determined that the ALJ's "paragraph B" and Listing analysis, although perfunctory and somewhat limited in scope in that section, was sufficient because the entire opinion as a whole addressed the relevant medical and non-medical evidence and was sufficient to justify the conclusions drawn. Additionally, the ALJ was entitled to rely on the opinions of the state agency physicians who determined that Jani did not meet or medically equal any of the Listings for mental disorders.

Nevertheless, however, the Court does find that the ALJ erred when conducting her RFC analysis. The ALJ does not mention SSR 15-1p at any point in the opinion, but more importantly she does not appear to consider the impact of Jani's IC symptoms with her other impairments; instead, the ALJ appears to evaluate each symptom and impairment separately – specifically, the ALJ mentions IC only in a few isolated sentences when reciting Jani's physical medical history. (Dkt. 16-2 at 57, R. 56).

As a result, the Court is not confident that the ALJ considered the combined effect of Jani's impairments, especially the interplay between her IC and pain with her mental disorders of autism, anxiety, and depression. Without this consideration, the Court is not positive that the ALJ's RFC analysis is adequate. It is not at all clear what RFC limitations the ALJ assigned to address Jani's interstitial cystitis and its wide-ranging effects, not least because the ALJ fails to even mention the condition

20

beyond stating that it was diagnosed or acknowledge the relevant SSR that should guide her consideration of this issue. *See Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010), as amended on reh'g in part (May 12, 2010) (an ALJ's failure to consider the cumulative effect of impairments not totally disabling in themselves is error). Without any such discussion or consideration, the Court is left without the opportunity for meaningful review. *See Carter v. Colvin*, No. 4:12-CV-00075-RLY, 2013 WL 5303744, at *5 (S.D. Ind. Sept. 19, 2013). As such, this matter must be remanded for further consideration of how Jani's interstitial cystitis impacts the RFC.

### C. Opinion Evidence

Next, Jani argues that the ALJ's decision to find Ms. Julie Krasnow's medical opinion unpersuasive was not supported by substantial evidence, and that the ALJ's failure to even mention the treatment records of her long-time therapist, Ms. Nancy Eisenman requires remand. (Dkt. 21 at 19-20). Plaintiff first argues that the ALJ failed to adequately consider the opinion of her behavioral therapist, Ms. Julie Krasnow. The ALJ's consideration of Ms. Krasnow's opinion[4] is as follows:

> Julie Krasnow, LCSW, issued a medical opinion restricting the claimant would be off-task for 25% of the workday and be absent more than 4 days per month (Ex. 24F). The undersigned does not find the Ms. Krasnow's assessment is persuasive because the limitations were not supported by the specific medical evidence

---

[4] The Commissioner urges the Court to deem Ms. Krasnow's opinion non-medical and, thus, one that the ALJ was not "required to discuss at all, let alone with any specificity." (Dkt. 22 at 16). However, the ALJ deemed Ms. Krasnow's opinion a medical one, and the ALJ evaluated it as such – therefore, the Commissioner's argument constitutes a post-hoc rationalization that the Court cannot consider. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (attempts to bolster ALJ's position with post-hoc rationale are impermissible); *Phillips v. Astrue*, 413 F. App'x 878, 883 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence.")

> relied upon. The restrictions are also inconsistent with the
> medical record, including the claimant's presentation with a
> normal mood and affect during treatment. (Ex. 19F/4, 7, 25F/3).

(Dkt. 16-2 at 58, R. 57). First, the Court notes that the ALJ failed to

acknowledge over half of the opinions provided in Ms. Krasnow's June 11, 2019

medical statement. For example, Ms. Krasnow indicated that Jani has moderate

limitations in interacting with others, marked limitations in understanding,

remembering, or applying information, and extreme limitations in concentrating,

persisting, or maintaining pace and adapting or managing oneself. (Dkt. 16-8 at 373,

R. 984). Ms. Krasnow also indicated that Jani has repeated episodes of

decompensation in work-like settings; a residual disease process such that even a

minimal increase in mental demands or change in environment would cause a

decompensation; a history of one or more years' inability to function outside a highly

supportive living arrangement. (Id. at 374, R. 985). Finally, Ms. Krasnow stated that

"Jani's diagnoses of depression, anxiety, and ADHD, as well as the pain she has, all

impact her executive functioning skills. These skills include, but are not limited to,

poor planning, difficulty switching focus, difficulty staying on task, time

management, organization, and remembering details." (Id.).

Instead, the ALJ provides two conclusory reasons for finding Ms. Krasnow's

opinion not persuasive: the opinion is not supported by the specific medical evidence

relied upon and is inconsistent with the medical record, including the claimant's

normal mood and affect at two medical visits. (Dkt. 16-2 at 58, R. 57). The ALJ never

actually explains how Ms. Krasnow's opinion is "not supported by the specific medical

evidence relied upon," or points to any inconsistencies between the record and the opinion, apart from the two exams showing normal mood and affect. As Plaintiff points out, however, those two medical visits were to Dr. Beam, her urologist, who only treats Jani for interstitial cystitis and kidney stones. (Dkt. 16-8 at 53, 377, R. 664, 988). A review of the record, as outlined above, shows considerable support for Ms. Krasnow's opinion, in her own treatment records, Plaintiff's subjective symptom complaints, and the records of Jani's therapist, Ms. Nancy Eisenman. As discussed *infra*, the ALJ never mentions Ms. Eisenman or evaluates her treatment records, and provides no analysis of Ms. Krasnow's treatment records either. This omission is particularly important in this case, because it appears neither of the state agency reviewing physicians were in possession of Ms. Krasnow's records at the time they rendered their opinions. (Dkt. 16-3 at 3-4, 16-20, R. 95-96, 108-112). Moreover, Ms. Krasnow's medical records and her evaluations directly relate to Jani's repeated assertions regarding the impact of her physical impairments on her mental impairments, and vice versa, as discussed in the previous section. The ALJ may have considered this evidence from Ms. Krasnow and deemed it unsupported, inconsistent, and unpersuasive, but without any such discussion provided in ALJ's opinion, this Court is not capable of undertaking any meaningful review.

As to Ms. Eisenman, the Court's review finds no mention of Ms. Eisenman, her treatment records, or her medical statement in the ALJ's decision[5]. Recognizing the

---

[5] Since the ALJ remains silent on Ms. Eisenman, the Court does find that her status as a social worker renders her a non-medical source whose opinion is not required to be considered by the ALJ. 20 C.F.R. § 416.920c(d). Nevertheless, given her long-standing treatment relationship with Jani and the fact that her records and statement lend considerable support for Jani's subjective symptom allegations

ALJ was not required to consider Ms. Eisenmann's opinion, the Court notes that Ms. Eisenman had weekly or bi-weekly visits with Jani for almost four years prior to the hearing, and Jani specifically mentioned Ms. Eisenman at the hearing. (Dkt. 16-2 at 81-82, R. 80-81; Dkt. 16-8 at 235-381, R. 846-992). Ms. Eisenman provided the following medical statement on December 12, 2017:

> Jani has reported to me several physical limitations based on clinical diagnoses from other medical professionals. I'm sure her medical files from these other professionals are a part of her assessment as well. While I do not diagnose formally, my diagnostic impression is that Jani suffers from trauma (PTSD) from childhood, and it is my understanding that another provider has given a formal diagnosis of such. This trauma has had far-reaching effects on day to day living, as has the chronic physical pain associated with other health problems. Jani also struggles with anxiety, some depressive symptoms, and other emotional problems (like being on the autistic spectrum) that make it very difficult to engage in interpersonal interactions and relationships.

> While Jani has days every once in awhile where she can understand, remember, and concentrate on things, functioning pretty well, she cannot predict when they will be. She cannot predict when she will be in too much pain to function normally throughout the day, when she will be too fatigued to get out of bed; and by her report, those days when she can are few and far between. There are times when her self-care suffers because of the fatigue and pain associated with her health concerns. Her lack of reliability on which days she will be well enough to work, and the infrequency of those days, would make it basically impossible to maintain a regular work schedule.

(Dkt. 16-7 at 304, R. 608). From the Court's review, Ms. Eisenman's statement touches on the same issues that both Jani and Ms. Krasnow mention, namely the interplay of Jani's mental disorders with the pain she experiences from her interstitial cystitis and the unpredictability of her symptoms. It is not clear why the

---

and for Ms. Krasnow's opinion, all of which undermine the ALJ's assigned RFC limitations, the Court finds that it was error for the ALJ to entirely ignore this highly pertinent evidence.

ALJ never addressed Ms. Eisenman's statement or her four year history of treating Jani on a weekly or bi-weekly basis, but that statement and those records undoubtedly constitute evidence that contradict the ALJ's conclusion. Because the Court is remanding on another matter, the Undersigned encourages the ALJ to evaluate Ms. Eisenman's records and statement on remand.

### D. Subjective Symptom Analysis

Since the Court has already determined that the ALJ's consideration of SSR 15-1p and the RFC warrants remand, the Court will not address the Plaintiff's argument that the ALJ erred during her 16-3p evaluation of Plaintiff's subjective symptoms. On remand, the ALJ should give further consideration to the interplay between Plaintiff's interstitial cystitis and her mental health complaints when evaluating Plaintiff's subjective symptoms.

### V.    CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings. Final judgment will issue accordingly.

So ORDERED.

Date: 7/28/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email.